**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHEILA PAUMER,

      Plaintiff-Appellant,

v.

CROWN CORK AND SEAL
COMPANY, INC., a Pennsylvania
corporation, FLOYD GETCHELL and
JOHN ADCOCK, in their official
capacities,

      Defendants-Appellees.

No. 98-8062
(D.C. No. 97-CV-42)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **MURPHY**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

      Sheila Paumer, then 20 years of age, was employed as an unskilled employee by

Crown Cork and Seal ("Crown Cork") on April 26, 1982 in its plant in Worland,

Wyoming. Crown Cork is a Pennsylvania corporation with a can manufacturing plant in

Worland. It has a master contract with the United Steel Workers of America, and a local

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

contract with Local Union No. 8810. In 1992, Paumer's job as a printer operator was discontinued and she was allowed to "bump" to the unskilled job of forklift operator. Shortly thereafter she began to have problems with management, and these form the basis for her present controversy with Crown Cork. Without going into detail, Paumer "self-disqualified" twice from her position as a forklift operator, complaining, *inter alia,* that she had not received adequate training for the position. She was subsequently laid off, briefly recalled to another position, but then laid off again. In connection therewith, Paumer filed several grievances, some of which were settled, though she lost some on the grounds that she was unable to do the work. Most of these matters surfaced in 1992 and 1993.

On or about September 7, 1995, Paumer filed a charge of sex discrimination with the Wyoming Fair Employment Practices Commission ("WFEPC"), stating therein that the date of the latest discrimination took place on August 10, 1995. This charge was forwarded to the Equal Employment Opportunity Commission ("EEOC") on September 20, 1995. The WFEPC dismissed Paumer's state charge of discrimination as being untimely, and the EEOC issued Paumer a right to sue notice on December 4, 1996. On February 18, 1997, Paumer filed the present action in the United States District Court for the District of Wyoming, naming as defendants Crown Cork and two of its supervisors.

In her complaint, Paumer, under the heading "General Factual Allegations," set forth in detail the alleged discriminatory and retaliatory acts of Crown Cork, which acts,

she said, were based on her gender. The acts she complained of commenced in October, 1992 and related to Paumer's efforts to perform as a forklift operator. The acts continued, off and on, throughout 1993 and involved, as indicated, self-disqualification on two occasions, layoff, failure to recall, then recall followed by a layoff, all, she said, because of her gender. Paumer also alleged that on September 7, 1995, she filed a charge of discrimination with the WFEPC, and that her state charge was forwarded to the EEOC on September 20, 1995, that she received a right to sue letter on December 6, 1996, and that she had instituted the present action within 90 days. She asserted that thereafter Crown Cork "retaliated" against her for filing a claim of discrimination with the EEOC.

Paumer set forth six causes of action, the first two being federal claims and the remaining four being supplemental state claims. Her first cause of action was based on 42 U.S.C. § 2000e-2, and she alleged that Crown Cork had discriminated against her because of her sex in connection with her efforts to qualify as a forklift operator. In connection therewith, she alleged sexual harassment, abusive work environment and "discriminatory failure to train and discriminatory layoffs and recall practices." In a second cause of action Paumer alleged that Crown Cork had retaliated against her because she filed a claim of discrimination with the EEOC, in violation of 42 U.S.C. § 2000e-2. The remaining four claims were based on breach of contract, promissory estoppel, violation of public policy, and breach of implied covenants of good faith and

fair dealing, all supplemental state claims. Crown Cork later filed its answer to the complaint, admitting and denying the various allegations therein.

After discovery, Crown Cork filed a motion for summary judgment, alleging that there was no material dispute of fact and that it was entitled to summary judgment as a matter of law. It was Crown Cork's position that Paumer had failed to timely file a charge of sex discrimination with the EEOC, and, that, additionally, she had failed to present a prima facie case of sex discrimination. A brief in support of that motion was also filed with the district court. Paumer filed a response to that motion along with a supporting brief. After hearing, the district court granted Crown Cork's motion for summary judgment, and entered judgment in favor of Crown Cork on all of Paumer's six claims.

As concerns Paumer's first cause of action, a Title VII claim, the district court held that it was barred by 42 U.S.C. § 2000e-5(e)(1) which requires that a charge of discrimination be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred unless the aggrieved person has initially instituted proceedings with a state or local agency, in which event the aggrieved person had 300 days to file his, or her, charges with the EEOC. The district court noted that most of the acts Paumer complained of occurred in 1992 and 1993, well outside the 300 day period preceding the filing of her charge of discrimination with the EEOC on September 20, 1995. The district court rejected Paumer's contention that the acts of Crown Cork

continued as late as August 1995 (well within the 300 day period) and that such constituted a "continuing violation." In so doing, the court concluded that the acts outside the 300 day period had the "degree of permanence" which should have alerted her "to the duty to assert her rights" within the statutory period, citing, *inter alia, Purrington v. University of Utah,* 996 F.2d 1025, 1028 (10th Cir. 1993); *Allen v. Denver Pub. Sch. Bd.,* 928 F.2d 978, 984 (10th Cir. 1991); and *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983). In addition, the district court found that on the record before it, Paumer had not shown a "pervasive, institutionalized system of discrimination . . . ." As indicated, the district court after granting summary judgment on Paumer's Title VII claim, also granted summary judgment on Paumer's claim of retaliation and her four supplemental state claims. However, in the present appeal, we are only concerned with Paumer's Title VII claim.[1]

It is agreed that under 42 U.S.C. § 2000e-5(e)(1), a charge of discrimination in the instant case has to be filed within 300 days after the alleged unlawful employment practice occurred and that such filing is a "prerequisite" to a civil suit under Title VII. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993); *Aronson v. Gressly,* 961 F.2d 907, 911 (10th Cir. 1992). Paumer concedes that the employment

---

[1]In its order granting summary judgment, the district court noted that Paumer had bid into the position of printer/mechanic and had returned to work on February 7, 1997, and was currently employed by Crown Cork at a rate of pay higher than that paid to forklift operators.

practices of Crown Cork occurring in 1992 and 1993 were not timely brought to the attention of the EEOC, but argues here, as she did in the district court, that since she relies on some management practices occurring in 1995, well within the 300 day period, she may, under the "continuing violation" exception, rely on the employment practices of Crown Cork which occurred in 1992 and 1993. As indicated, the district court rejected that contention, and we are in accord with such.

We deem the recent case of *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301 (10th Cir. 1999), decided August 12, 1999, to control the present controversy. In that case the plaintiff filed a charge of discrimination with the EEOC on February 6, 1996, and attempted to rely on practices occurring in 1993 by showing unlawful practices occurring in 1995 under the "continuing violation" doctrine. The district court rejected that argument and dismissed the Title VII claim. On appeal we affirmed such dismissal. In so doing we spoke as follows:

> The continuing violation doctrine "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin*, 3 F.3d at 1415 n. 6. [*Martin v. Nannie and the Newborns*, 3 F.3d 1410, 1415 n. 6 (10th Cir. 1993)]. Thus, a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred. *See id.* We agree with the district court's conclusion that, although the 1993 conduct is of the same general type as the 1995 conduct, the 1993 decision was a discrete and salient event that put Ms. Bullington on notice that United violated her rights. The allegations contained in Ms. Bullington's Amended Complaint clearly indicate that after United declined to hire her in January 1993, she spoke to Ms. Stuke in March 1993 and expressed her opposition to "what she believed . . . to have been sex and

age discrimination by [United] in not selecting her for the position of line pilot." Because Ms. Bullington was, at the very least, on inquiry notice of the alleged discrimination as early as 1993, she had a duty to assert her rights at that time and she cannot rely on a continuing violation theory to avoid the statutory time bar.
*Id.* at 1311.

So in the instant case Paumer was at least on "inquiry notice" of Crown Cork's alleged discrimination as early as 1993, and "she had a duty to assert her rights at that time and she cannot rely on a continuing violation theory to avoid the statutory time bar."

Paumer makes the additional argument that she presented sufficient evidence to avoid summary judgment on a claim of gender discrimination based on Crown Cork's continued failure to rehire her between November 1994 and the time she filed her WFEPC claim in September 1995. This claim is without merit. The record indicates that during this time period an employee could only bump[2] into the position of forklift operator. Because Paumer had self-disqualified from the forklift position, she lost all bumping rights. Paumer only had the right to bid into the forklift position. No opportunities to bid into the position arose during the relevant time period, thus Paumer has no claim that Crown Cork discriminatorily failed to rehire her.

---

[2]Bumping allows an employee with seniority to force an employee with less seniority out of a position, when the senior employee's current position is either eliminated or downsized.

In sum, we are in general agreement with the district court's analysis of this case and its disposition thereof.[3]

Judgment affirmed.

Submitted for the Court,

Robert H. McWilliams
Senior Circuit Judge

---

[3]In her brief in this court Paumer presents no argument that the district court erred in dismissing her cause of action based on retaliation for her filing a charge of discrimination with the EEOC on September 20, 1995, nor does she claim that the district court erred in dismissing her four supplemental state claims. Accordingly, those matters are not before us. *Gaines-Tabb v. ICI Explosives,* 160 F.3d 613, 624 (10th Cir. 1998)("[W]e adhere to our rule that arguments not set forth fully in the opening brief are waived.") In this regard, *see also Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995), where we declined, on appeal, to consider a matter which, though mentioned in appellant's brief, was not "adequately briefed."